# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **KHOKAR SHUJAUDDIN,** *et al.* | : | **CIVIL ACTION** |
| *Plaintiffs* | : | |
| | : | **NO. 19-0876** |
| **v.** | : | |
| | : | |
| **BERGER BUILDING PRODUCTS,** | : | |
| **INC.,** *et al.* | : | |
| *Defendants* | : | |

NITZA I. QUIÑONES ALEJANDRO, J.                                       APRIL 18, 2023

## MEMORANDUM OPINION

**INTRODUCTION**

In this civil action arising out of a workplace injury, Plaintiff Khokar Shujauddin ("Plaintiff") and his wife, Plaintiff Najma Shuja, assert claims of strict product liability, negligence, breach of implied warranties, and loss of consortium against numerous defendants, including Defendant The Heim Group ("Heim"). [ECF 43]. Discovery ensued and completed.

Before this Court is Heim's motion for summary judgment on all of Plaintiff's claims against it. [ECF 122]. Plaintiff opposes the motion. [ECF 126].[1] The issues raised in the motion have been fully briefed and are ripe for disposition. For the reasons set forth herein, the motion for summary judgment is granted, *in part*, and denied, *in part*.

**BACKGROUND**

When considering a motion for summary judgment, a court must consider all record evidence and relevant facts in the light most favorable to the nonmoving party—here, Plaintiff. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Galena v. Leone*, 638 F.3d 186,

---

[1] This Court has also considered Heim's reply. [ECF 134].

196 (3d Cir. 2011).  The facts relevant to this motion for summary judgment are summarized as

follows:[2]

  In 1984, Heim designed and manufactured a power punch press (the "press" or the "Heim press"), an industrial machine used to produce metal parts, and sold it to a company called Royal Apex.  Defendant Omnimax International ("Omnimax") acquired Royal Apex and the Heim press around 2005.

*Point-of-Operation Guarding*

  At the time of sale to Royal Apex, and as designed by Heim, the press did not include any guarding at the "point of operation," which is the area where the press meets with a "die" attached to form metal parts.  While acknowledging that guarding is essential for the safe operation of the press, Heim's position was—and remains—that users of the press are responsible for installation of guarding at the point of operation.[3]

  After Omnimax purchased the Heim press, Omnimax installed a point-of-operation guard that was on the press at the time of Plaintiff's injury.  The guard installed by Omnimax was not "interlocked" or "interlocking," but rather flipped on its hinges into a "down" position so that users could reach into the point of operation.  Users were able to operate the press while the guard was either in place or in the down position.  In contrast, an interlocked guard prevents operation of a press until the guard is in place.

*Foot Pedal & Replacement*

  Heim built the press with a foot pedal designed and manufactured by Linemaster.  The foot pedal allows users to operate the press using only their foot.  No hand involvement is needed.  The Linemaster foot pedal contained an "anti-trip" safety mechanism that required two steps by the user to activate the machine.  Notably, Occupational Safety and Health Administration ("OSHA") and American National Standards Institute ("ANSI") regulations did not mandate this type of anti-trip foot pedal.  This anti-trip mechanism was intended to prevent inadvertent operation of the press and resulting injury.  The Linemaster foot pedal was attached at the time Omnimax purchased the press from Royal Apex.

---

[2]  These facts are taken from the parties' briefs, exhibits, and statements of facts.  To the extent that any facts are disputed, such disputes are noted and construed in the light most favorable to Plaintiff.  *Galena*, 638 U.S. at 196.

[3]  The parties and their respective experts dispute whether the prevailing industry standards at the time the press was manufactured and sold dictated that the user, rather than the manufacturer, should be responsible for providing point-of-operation guarding.

In 2014, Omnimax purchased a replacement foot pedal from Defendant Automation Direct ("Automation Direct") and installed it on the Heim press. A representative of Automation Direct described the company as "the Amazon.com of factory automation." (Gary Marchuk Dep. Tr., Heim's Mot. Ex. D, ECF 122-4, at 9:13–14). The new foot pedal was designed and manufactured by Defendant Comepi S.R.L. ("Comepi"). The Comepi foot pedal did not include an anti-trip mechanism, and required only one step and minimal force to activate.

<u>*Plaintiff's Press Experience and Injury*</u>

Plaintiff is originally from Pakistan, where for years he worked for his father's business in a facility that had six or seven power presses similar to the Heim press. Plaintiff also purchased his own power press while living and working in Pakistan. He used his press from the 1990s until he left Pakistan. At his deposition, Plaintiff testified that his father taught him that he should turn off the press before working on it with his hands. Plaintiff also testified that in Pakistan, he used a guard on the machine to prevent his fingers or hands from getting caught in the point of operation. The presses Plaintiff worked on in Pakistan did not have a guard installed, so Plaintiff created his own precautionary guarding.

Plaintiff came to the United States in 2002 and began working for Royal Apex as a die setter in 2005. In this position, Plaintiff worked on the Heim press involved in this civil action. As part of his training for this position, Plaintiff was taught the importance of point-of-operation guarding.

After Omnimax purchased Royal Apex, Plaintiff continued in his position as a die setter using the Heim press. During his employment, Plaintiff attended regular safety meetings, some of which were on the topic of machine guarding.

On July 27, 2017, Plaintiff was in the process of setting the die on the Heim press. Prior to the accident, Plaintiff inserted a die into the press and was running the machine to create "test pieces" to confirm that he had placed the die correctly. While testing the die, Plaintiff had the point-of-operation guard in the down, or disabled, position. He testified that he did not keep the guard up while testing the die because doing so would be inconvenient and time-consuming. When he finished running the test pieces, Plaintiff attempted to remove his foot from the Comepi foot pedal so that he could move to the other side of the machine. However, he inadvertently activated the foot pedal and lost his balance. As he was falling toward the press, he placed his hand into the exposed point of operation as the activated foot pedal caused the machine to cycle. Plaintiff's hand was crushed, causing serious injury.

## LEGAL STANDARD

Federal Rule of Civil Procedure ("Rule") 56 governs summary judgment motion practice. This Rule provides that summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A fact is "material" if proof of its existence or non-existence might affect the outcome of the litigation, and a dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.  When evaluating a motion under Rule 56, the court must view the evidence in the light most favorable to the nonmoving party.  *Galena*, 638 F.3d at 196.

Pursuant to Rule 56, the movant bears the initial burden of informing the court of the basis for the motion and identifying those portions of the record that the movant "believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The movant can meet this burden by showing that the nonmoving party has "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case." *Id.* at 322.  After the movant has met its initial burden, summary judgment is appropriate if the nonmoving party fails to rebut the movant's claim by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials" that show a genuine issue of material fact or by "showing that the materials cited do not establish the absence or presence of a genuine dispute." Fed. R. Civ. P. 56(c)(1)(A)–(B); *see also Davis v. City of Phila.*, 2015 WL 4404871, at *2 (E.D. Pa. July 20, 2015) (quoting Fed. R. Civ. P. 56(c)).  The nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  The

nonmoving party may not rely on "bare assertions, conclusory allegations or suspicions," *Fireman's Ins. Co. of Newark v. DuFresne*, 676 F.2d 965, 969 (3d Cir. 1982), or rest on the allegations in the pleadings, *Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)).  Rather, the nonmoving party must "go beyond the pleadings" and, either by affidavits, depositions, answers to interrogatories, or admissions on file, "designate 'specific facts showing that there is a genuine issue for trial.'"  *Id.*

**DISCUSSION**

In his complaint, Plaintiff asserts various claims against Heim, *to wit*: strict liability design defect and negligent design claims based on Heim's failure to include a point-of-operation guard on the press; strict liability and negligent failure to adequately warn users of the dangers associated with operating the press without point-of-operation guarding; and breach of the implied warranties of merchantability and fitness for a particular purpose.  Heim moves for summary judgment on all claims.  The arguments with respect to each claim will be addressed in turn.

***Strict Liability – Design Defect***

With respect to Plaintiff's strict liability claim premised on defective design of the press, Heim argues that: (1) Plaintiff has failed to present sufficient evidence that the press was defectively designed; (2) the report of Plaintiff's proffered expert, Brian O'Donel, P.E., does not meet the requirements of Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993); (3) Heim cannot be held liable because the press was substantially changed when Omnimax replaced the Linemaster foot pedal with the Comepi foot pedal; (4) and Plaintiff misused the press, foreclosing Heim's liability.

The Supreme Court of Pennsylvania has adopted the strict liability formulation set out in § 402A of the Restatement (Second) of Torts. *Tincher v. Omega Flex, Inc.*, 104 A.3d 328, 394–

99 (Pa. 2014).  Under the Second Restatement, three types of defects may give rise to a strict liability claim: (1) design defect; (2) manufacturing defect; and (3) warning defect (*i.e.*, failure to warn or inadequate warnings).  *See Phillips v. A-Best Prods. Co.*, 665 A.2d 1167, 1170 (Pa. 1995); *Doughtery v. C.R. Bard*, 2012 WL 2940727, at *2 (E.D. Pa. July 18, 2012).  To establish a strict liability claim based on a design defect, a plaintiff must show that: (1) the product was defective; (2) the defect was the proximate cause of the plaintiff's injury; and (3) the defect existed when the product left the defendant's control.  *DeJesus v. Knight Indus. & Assocs., Inc.*, 2016 WL 4702113, at *5 (E.D. Pa. Sept. 8, 2016) (citing *Pavlik v. Lane Ltd./Tobacco Exp. Int'l*, 135 F.3d 876, 881 (3d Cir. 1998)).  Section 402A provides that a defendant may be liable for a defective product when the product "is expected to and does reach the user or consumer ***without substantial change*** in the condition in which it is sold."  Restatement (Second) of Torts § 402A(1)(b) (Am. Law Inst. 1965) (emphasis added).

A defective product is one that is "unreasonably dangerous" to the consumer.  *McPeak v. Direct Outdoor Prods., LLC*, 2022 WL 4369966, at *3 (E.D. Pa. Sept. 20, 2022) (citing *Tincher*, 104 A.3d at 328).  In the landmark *Tincher* decision, the Pennsylvania Supreme Court "returned the question of whether a product is 'unreasonably dangerous,' previously decided by the trial court under *Azzarello* [*v. Black Brothers Co.*, 391 A.2d 1020 (Pa. 1978), *overruled by Tincher*, 104 A.3d 328], back to the jury to be determined after consideration of the consumer expectation or risk-utility test."  *McPeak*, 2022 WL 4369966, at *4 (citing *Sullivan v. Werner Co.*, 253 A.3d 730, 741 (Pa. Super. Ct. 2021)).

Under the consumer expectations test, a product is defective if it poses a danger that is unknowable and unacceptable to the average or ordinary consumer.  *Tincher*, 104 A.3d at 394 (citation omitted).  Meanwhile, the risk-utility test is a cost-benefit analysis; a product is defective

under the risk-utility standard "if a reasonable person would conclude that the probability and seriousness of harm caused by the product outweigh the burden or costs of taking precautions." *Id.* at 397 (citations and quotations omitted).  Since *Tincher*, a strict liability design defect claim in Pennsylvania requires proof that either test is satisfied.  *Tincher*, 104 A.3d at 417.

    *1.  Evidence Supporting Design Defect*

    Heim argues that Plaintiff has not presented "any evidence" to support his design defect claim because Plaintiff's own expert, Brian O'Donel, P.E., opines "only that a 'defect' exists in the New Foot Switch [or Comepi foot pedal], which is not a Heim product."  (Heim's Br., ECF 122, at p. 55).  However, Heim misrepresents the opinions in Mr. O'Donel's expert report.  As noted by Plaintiff, Mr. O'Donel expressly opined that: "Heim designed . . . the incident mechanical power press without point of operation guarding.  A lack of proper interlocked guarding was unsafe and unreasonably dangerous and denied Shujauddin the protection intended and was a cause of his injury."  (O'Donel Report, Pls.' Resp. in Opp. Ex. H, ECF 126-13, at p. 16).

    Based on the totality of the evidence, this Court finds there is sufficient evidence from which a reasonable factfinder could determine that the Heim press was unreasonably dangerous.  Notably, Mr. O'Donel, a professional mechanical engineer, opined that the Heim press was "unreasonably dangerous" because it was not designed to include an interlocked guard at the point of operation.  Mr. O'Donel and Heim's expert, Mr. Karosas, dispute whether industry standards at the time reasonably placed the responsibility for guard installation on the manufacturer or on the consumer.  These battling expert opinions give rise to a genuine issue of material fact as to whether the Heim press, as sold, was "unreasonably dangerous."  *See McPeak*, 2022 WL 4369966, at *3 (citing *Tincher*, 104 A.3d at 328).  As such, reasonable minds could differ as to whether the Heim press was defectively designed, and Plaintiff has met his summary judgment burden.

2.  *Challenge to Plaintiff's Expert*

Heim also argues that this Court should not consider Mr. O'Donel's expert report because the report does not meet the requirements of Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579.  Specifically, Heim contends that Mr. O'Donel (1) did not evaluate the press as sold by Heim in 1984 but instead evaluated the press with the Comepi foot pedal and (2) cites to no authority for his subjective opinion that the press should have included an interlocked point-of-operation guard at the time of sale.

When a party offers an expert witness, the court functions as a "gatekeeper" to ensure that the expert's testimony complies with the applicable evidentiary rules and case law.  *In re Paoli R.R. Yard PBC Litig.* ("*Paoli II*"), 35 F.3d 717, 732 (3d Cir. 1994).  Federal Rule of Evidence 702, which governs expert testimony, provides that a witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: "(a) the expert's . . . specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case."  Fed. R. Evid. 702.  The United States Court of Appeals for the Third Circuit has interpreted Federal Rule of Evidence 702 as requiring three criteria—qualification, reliability, and fit.  *Paoli II*, 35 F.3d at 741–43.  "Qualification refers to the requirement that the witness possess specialized expertise."  *Schneider v. Fried*, 320 F.3d 396, 404 (3d Cir. 2003).  Reliability requires that the testimony "be based on the 'methods and procedures of science' rather than on 'subjective belief or unsupported speculation'; the expert must have 'good grounds' for his or her belief."  *Paoli II*, 35 F.3d at 742 (quoting *Daubert*, 509

U.S. at 590).  Lastly, "fit" refers to the relevancy of the expert's testimony "for the purposes of the case" and its ability to "assist the trier of fact."  *Schneider*, 320 F.3d at 404.

Here, Mr. O'Donel's report reveals that he is a mechanical engineer with over thirty years of experience in industrial and machine safety, machine guarding and policies, procedures, and training, as well as the design, fabrication, and use of press and die equipment.  As such, this Court finds that because Mr. O'Donel possesses the requisite "specialized expertise" to opine in this matter, he is qualified as an expert.  *See id.* at 404.

With respect to Heim's argument that Mr. O'Donel did not evaluate the press as it was sold to Royal Apex in 1984, this Court finds this argument unpersuasive.  Plaintiff does not claim that the original Linemaster pedal was defective.  The expert report indeed indicates that Mr. O'Donel inspected the press as it was when Plaintiff was injured, with the Comepi foot pedal.  As discussed *infra*, whether the replacement of the Linemaster foot pedal with the Comepi foot pedal constitutes a "substantial change" is a question reserved for the jury unless it is clear that reasonable minds could not differ.  *See Tincher*, 104 A.3d at 335.  As such, Mr. O'Donel's proffered opinions, based on his evaluation of the Heim press and Comepi foot pedal, are relevant to the case and will assist the trier of fact in determining whether the Comepi foot pedal was defective.  *See Schneider*, 320 F.3d at 404.

As to Heim's contention that Mr. O'Donel cites no authority for his opinions regarding the lack of interlocked guarding, Heim is also mistaken.  In his report, Mr. O'Donel cites numerous publications by the National Safety Council, National Institute for Occupational Safety and Health, American Society of Mechanical Engineers, and others to support his opinion that Heim should have designed the press with interlocked point-of-operation guarding rather than relying on users to install aftermarket guards themselves.  These cited materials were published prior to 1984, when

Heim sold the press.  In light of the cited publications, this Court finds that Mr. O'Donel relied on sound scientific methods and procedures for the opinions offered in his report.  *See Paoli II*, 35 F.3d at 742.

Further, Heim's challenges to Mr. O'Donel's expert opinions are more appropriately addressed via cross-examination at trial, as they go to Mr. O'Donel's credibility and to the weight of his testimony, rather than the admissibility of his expert opinions.  The opinions presented in Mr. O'Donel's expert report, along with other evidence as discussed above, create genuine issues of material fact as to whether the Heim press was defectively designed.

   *3.  Substantial Change*

Heim also argues that it cannot be held liable under strict liability because the press was "substantially changed" after the time of sale and by the time Plaintiff was injured.  Specifically, Heim contends that Omnimax's post-sale removal of the original, anti-trip foot pedal and the replacement with the Comepi foot pedal constitutes a substantial change in the product.  In response, Plaintiff argues that there is evidence that the lack of guarding on the machine rendered the press defective regardless of the foot pedal replacement, and that the issue of whether the replacement of the foot pedal was reasonably foreseeable should be reserved for the jury.

Following the *Tincher* decision, the determination of whether a product is defective is a factual question ordinarily reserved for the jury, *Sikkelee v. Precision Airmotive Corp.*, 907 F.3d 701, 716 (3d Cir. 2018) (citing *Tincher*, 104 A.3d at 335)), as are the issues of whether a change to a product was substantial, whether that change was foreseeable, and proximate causation, *id.* at 716 (citing *Merriweather v. E.W. Bliss Co.*, 636 F.2d 42, 44–45 (3d Cir. 1980), *Hamil v. Bashline*, 392 A.2d 1280, 1287–88 (Pa. 1978), and *D'Antona v. Hampton Grinding Wheel Co.*, 310 A.2d

307, 310 (Pa. Super. Ct. 1973)).  These questions are "removed from the jury's consideration only where it is clear that reasonable minds could not differ on the issue." *Tincher*, 104 A.3d at 335.

Considering the evidence presented and the conflicting expert opinions, this Court finds that reasonable minds could differ on the issue of whether the replacement of the original Heim foot pedal with the Comepi foot pedal constitutes a substantial change under § 402A of the Restatement.  Importantly, there is evidence from which a reasonable factfinder could conclude that the lack of interlocked guarding on the machine rendered the press defective and was the cause of Plaintiff's injury, even if the foot pedal had not been replaced.  In his expert report, Mr. O'Donel opined that the Heim press was unreasonably dangerous because it was not designed to include an interlocked guard at the press's point of operation.  Mr. O'Donel and Heim's expert, George V. Karosas, P.E., dispute whether industry standards at the time placed the responsibility for guard installation on the manufacturer versus the consumer.  These conflicting expert opinions evince genuine disputes of material fact as to causation.  *See Sikkelee*, 907 F.3d at 716 (denying summary judgment over defendant's substantial change argument where experts disputed proximate cause of plaintiff's injury).

Further, reasonable minds could differ as to whether it was foreseeable to Heim that the foot pedal would be replaced with one that did not contain the anti-trip safety mechanism.  Notably, while Heim chose to include an anti-trip foot pedal when it sold the press to Royal Apex, Mr. Karosas acknowledged in his report, (Heim's Mot. Ex. J, ECF 122-10), that OSHA and ANSI regulations at the time of sale did not require foot pedals to contain anti-trip mechanisms.  A reasonable factfinder could conclude from this evidence that it was foreseeable to Heim that users of the press might replace the Linemaster foot pedal with one that did not contain an anti-trip mechanism, such as the Comepi foot pedal.  *See Sikkelee*, 907 F.3d at 716 (noting "there are

11

circumstances in which a manufacturer can be held liable for a component part that caused a plaintiff's injury, even where the part was made by a different entity," in rejecting substantial change argument for summary judgment purposes following *Tincher*).

In light of these factual disputes, summary judgment is not appropriate based on Heim's argument of a purported substantial change in the product. *See Tincher*, 104 A.3d at 335.

### 4.   Misuse

Heim also contends that it is entitled to summary judgment on the theory of a design defect because Plaintiff misused the press.  In response, Plaintiff argues that any purported "misuse" of the press was foreseeable by Heim.

Misuse is an affirmative defense for which a defendant bears the burden of proof.  *Wright v. Ryobi Techs., Inc*, 175 F. Supp. 3d 439, 448 (E.D. Pa. 2016) (citing *Reott v. Asia Trend, Inc.*, 55 A.3d 1088, 1092 (Pa. 2012)).  To establish misuse of a product, the defendant must demonstrate that the plaintiff used the product in a manner that was "unforeseeable, outrageous, and extraordinary."  *Id.* (citation omitted); *see also Suchomajcz v. Hummel Chem. Co.*, 524 F.2d 19, 25 (3d Cir. 1975) ("Pennsylvania does impose liability upon a manufacturer for harm caused by misuse of its product, if that misuse was foreseeable.").  A court cannot grant summary judgment on grounds of misuse "unless it is established that the misuse solely caused the accident while the design defect did not contribute to it."  *Smith v. Yamaha Motor Corp., U.S.A.*, 5 A.3d 314, 321 (Pa. 2010).

Heim argues that it could not have foreseen that Plaintiff would operate the press without a guard in place, given his admitted knowledge of the associated dangers and training.  This argument is misplaced.  It is undisputed that Heim sold the press without a guard at the point of operation, placing the responsibility on buyers to choose which type of guard, if any, to install.  As

such, a reasonable factfinder could find it was foreseeable that a user would operate the press without a guard, or with a non-interlocked guard allowing the machine to cycle with the guard in the down position.  Furthermore, as previously discussed, there is a genuine dispute of material fact as to whether the lack of interlocked guarding was a factual cause of Plaintiff's injury.  As such, summary judgment is not warranted based on misuse because Heim has not established that the purported misuse was the sole cause of the accident.  *See id.*

For the foregoing reasons, Heim is not entitled to summary judgment on Plaintiff's strict liability design defect claim.[4]

### *Negligence – Design Defect*

As to Plaintiff's negligent design claim, Heim argues that Plaintiff cannot establish the requisite causation element because the guard was not in place at the time of the accident.  Heim also raises several arguments regarding the persuasiveness of the opinions stated in Plaintiff's expert report.  In response, Plaintiff contends that Heim's sale of the press without any guarding is sufficient to establish a *prima facie* case of negligence.

To prevail in a negligence action based on a design defect, a plaintiff "must show that the defendant had a duty to conform to a certain standard of conduct, that the defendant breached that duty, that such breach caused the injury in question, and actual loss or damage."  *Berrier v. Simplicity Mfg., Inc.*, 563 F.3d 38, 61 (3d Cir. 2009) (quoting *Phillips v. Cricket Lighters*, 841 A.2d 1000, 1008 (Pa. 2003)).  Specifically, the plaintiff must show that the defendant "failed to exercise reasonable care in the adoption of a safe design."  *McGrain v. C.R. Bard, Inc.*, 551 F. Supp. 3d 529, 541 (E.D. Pa. 2021); *see also* Restatement (Second) of Torts § 398 (Am. Law Inst.

---

[4]     In its original brief, Heim argued that Plaintiff assumed the risk.  Shujuaddin responded that this defense is inapplicable because his injuries occurred within the scope of his employment on equipment furnished by his employer.  Heim withdrew its assumption of risk argument for purposes of the motion for summary judgment.  (Heim's Reply, ECF 134, at p. 15).  As such, this Court will not address it.

1965) ("Restatement (Second) of Torts § 398 (1965) (stating that the manufacturer of a product "made under a plan or design which makes it dangerous for the uses for which it is manufactured" may be liable for injury caused by "failure to exercise reasonable care in the adoption of a safe plan or design").  As noted, Heim challenges Plaintiff's negligent design claim with respect to causation.  A plaintiff may show causation by introducing expert testimony showing: "(1) the product at issue is capable of causing the alleged injury (general causation), and (2) the product did in fact cause the plaintiff's alleged injury (specific causation)."  *Schrecengost v. Coloplast Corp.*, 425 F. Supp. 3d 448, 461 (W.D. Pa. 2019) (citation omitted).

Heim argues that Plaintiff cannot establish the causation of his negligent design claim because Plaintiff had intentionally disabled the guard on the press at the time of his accident. Regardless, Plaintiff points to Mr. O'Donel's opinion that the lack of an interlocked guard on the machine made it unreasonably dangerous.   Notably, Mr. O'Donel opined that the lack of interlocked guarding on the Heim press was unreasonably dangerous and was a cause of Plaintiff's injury.  According to Mr. O'Donel, an interlocked guard prevents operation of the press until the guard is in place.  While Plaintiff indeed testified that he chose to operate the press without the non-interlocked guard in place, a reasonable factfinder could conclude from the evidence, including Mr. O'Donel's opinions that Plaintiff would not have been injured if the press had been designed with an interlocked guard because the press would not have been activated when Plaintiff inadvertently pressed the foot pedal.  Thus, based on the evidence presented, this Court finds that there are genuine disputes of material fact as to whether the lack of interlocked guarding on the Heim press was (1) capable of causing Plaintiff's injury and (2) did in fact cause the injury.  *See id.* at 461.

14

As to Heim's arguments regarding Mr. O'Donel's expert report, these argument were addressed—and rejected—above.  Heim's challenges to Mr. O'Donel's opinions are better suited for cross-examination, as they go to his credibility and the weight of his proposed testimony.  For the foregoing reasons, Heim is not entitled to summary judgment on Plaintiff's negligent design claim.

### Strict Liability – Failure to Warn

With respect to Plaintiff's strict liability failure to warn claim, Heim argues, *inter alia*, that it is entitled to summary judgment because Plaintiff was aware of the dangers of using the press without a guard in place independent of any warnings by Heim.  In response to this argument, Plaintiff contends that the adequacy of Heim's warnings is a question for the jury.

To establish a strict liability claim based on failure to warn under Pennsylvania law, the plaintiff must show that the dangerous condition was the cause in fact of the plaintiff's injury and that the absence or inadequacy of the defendant's warnings was the proximate cause of the injury. *Zuzel v. Cardinal Health, Inc.*, 565 F. Supp. 3d 623, 639 (E.D. Pa. 2021) (citing *Pavlik*, 135 F.3d at 881).  To survive a motion for summary judgment, the plaintiff must provide evidence that supports a reasonable inference "that the existence of an adequate warning may have prevented the accident." *Id.* (quoting *Conti v. Ford Motor Co.*, 743 F.2d 195, 198 (3d Cir. 1984)).  However, if the record shows that the plaintiff was "fully aware of the risk posed by the product," such evidence will defeat a failure to warn strict liability claim. *Id.* (citing *Overpeck v. Chi. Pneumatic Tool Co.*, 823 F.2d 751, 756 (3d Cir. 1987), and *Sherk v. Daisy-Heddon, a Div. of Victor Comptometer Corp.*, 450 A.2d 615, 618 (Pa. 1982)) (other citations omitted).

Here, the undisputed evidence shows that Plaintiff was aware of the danger of operating the press without a guard in place.  At his deposition, Plaintiff testified that he was aware that

operating the press without a guard in place was dangerous and could result in injury to his hand or fingers.  Plaintiff acquired this knowledge from his experience operating power presses since the 1990s and from his father decades before his accident.  The record also shows Plaintiff was trained by his employer regarding the importance of ensuring the guard is in place while using the press and attended regular safety meetings.  Plaintiff further testified that at the time of the accident, he chose to operate the press without a guard because to keep putting the guard on and off while setting the die would be "inconvenient."  (*See* Pl. Dep. Tr., Heim's Mot. Ex. G, ECF 122-7, at 74:14).  Together, this evidence demonstrates Plaintiff's awareness—independent of warnings by Heim—that he faced injury to his hand and fingers by intentionally operating the press without a guard in place.

Nevertheless, Plaintiff contends that summary judgment is inappropriate because the adequacy of Heim's warnings is a question that should be reserved for the jury.  As discussed, the evidence shows that Plaintiff was well aware of the dangers he faced when operating the press without a guard in place.  The adequacy of Heim's warnings or any warning is irrelevant because no reasonable juror could find that the lack of adequate warnings was the proximate cause of Plaintiff's injury.  *See Zuzel*, 565 F. Supp. 3d at 639.  Because Plaintiff admittedly was aware of the danger of using the press without a guard, the failure to warn claim against Heim fails.  *See id.* Therefore, Heim is entitled to summary judgment on the strict liability claim of failure to warn of the dangers of using the press without a guard.

### *Negligence – Failure to Warn*

Heim also argues that it is entitled to summary judgment on Plaintiff's negligent failure to warn claim for the same reasons as the strict liability failure to warn claim.  Plaintiff contends that the jury should decide whether Heim's warnings were adequate.

To recover for a negligence claim based on failure to warn, the plaintiff must show (1) the defendant owed a duty to plaintiff, (2) the defendant breached that duty, and (3) the breach was the proximate cause of the plaintiff's injury.  *Roaland v. Novartis Pharms. Corp.*, 34 F. Supp. 3d 556, 569 (W.D. Pa. 2014).  That is, the plaintiff must show that the defendant failed to exercise reasonable care in warning users of the dangers associated with its product.  *See Cohen v. Johnson & Johnson*, 2022 WL 5109167, at *15 (W.D. Pa. Oct. 5, 2022) (citing *Soufflas v. Zimmer, Inc.*, 474 F. Supp. 2d 737, 751 (E.D. Pa. 2007)).  As in the strict liability context, a negligent failure to warn claim fails if the plaintiff "knew, or should have known, of that risk about which the missing warning would have cautioned."  *Robinson v. Delta Intern. Machinery Corp.*, 274 F.R.D. 518, 522 (E.D. Pa. 2011) (quoting *Mitchell v. Modern Handling Equip. Co.*, 1999 WL 1825272, at *6 (Pa. Ct. Com. Pls. June 11, 1999)).

Like his strict liability failure to warn claim, Plaintiff's negligent failure to warn claim cannot proceed because the undisputed evidence shows that Plaintiff was fully aware of the dangers associated with using the Heim press without a guard in place, independent of any warnings Heim could have provided.  Thus, Heim's purported failure to warn could not have been the proximate cause of Plaintiff's injury.  *See Robinson*, 274 F.R.D. at 522–24 (granting summary judgment on negligent and strict liability failure to warn claims for lack of proximate cause where plaintiff was independently aware of danger).  Because Plaintiff cannot maintain a negligent failure to warn claim, Heim's is entitled to summary judgment on this claim.

### Breach of Warranty

Plaintiff also asserts claims against Heim for breach of the implied warranties of merchantability and fitness for a particular purpose.  Heim argues, *inter alia*, that it is entitled to summary judgment on these claims because the claims are time-barred.  Plaintiff offers no

17

argument or evidence in response to this argument by Heim.  Because Plaintiff has not met his summary judgment burden, Heim's motion for summary judgment is granted on this issue.  Fed. R. Civ. P. 56(c)(1)(A)–(B); *see also Davis*, 2015 WL 4404871, at *2.

Further, "[i]n Pennsylvania, breach of warranty claims, such as claims for a breach of implied warranty of merchantability or implied warranty of fitness for a particular purpose, are governed by a four-year statute of limitations." *Ruddy v. Polaris Indus., Inc.*, 2022 WL 628416, at *17 (M.D. Pa. Mar. 3, 2022) (citing 13 Pa. Cons. Stat. § 2725(a) ("An action for breach of any contract for sale must be commenced within four years after the cause of action has accrued.")). A cause of action for breach of warranty generally accrues when the breach occurs, *i.e.*, when tender of delivery is made to the purchaser.  *See* 13 Pa. Cons. Stat. § 2725(b).

Here, it is undisputed that Heim sold the press to Royal Apex in 1984, and Plaintiff's accident, the basis for this civil action, did not occur until 2017.  Therefore, Plaintiff commenced this action more than four years after tender of delivery was made and the cause of action for breach of warranty accrued.  Plaintiff offers no argument that the limitations period was tolled and the cause of action accrued at a later date.  *See Ruddy*, 2022 WL 628416, at *17 (stating that the discovery rule does not apply to warranty claims).  Because the undisputed evidence shows that Plaintiff's claims against Heim for breach of implied warranty are time-barred, Heim's motion for summary judgment is granted with respect to these claims.

**CONCLUSION**

For the foregoing reasons, Heim's motion for summary judgment is granted as to the strict liability failure to warn claim, the negligent failure to warn claim, and the breach of warranty claims.  The motion is denied as to Plaintiff's strict liability design defect and negligent design claims.  Accordingly, judgment will be entered in favor of Heim and against Plaintiff on the strict

liability and negligent failure to warn claims and the breach of warranty claims.   An Order consistent with this Memorandum Opinion follows.

*NITZA I. QUIÑONES ALEJANDRO*, J.